Good morning, ladies and gentlemen. I'm told that all counsel are here in the cases being argued this morning, so no need to call attendance. We can start right away. United States v. Hack. Good morning, Your Honors. May it please the Court. My name is James Kennedy. I'm the Acting U.S. Attorney for the Western District of New York. We're here today to ask the Court, in conducting its own de novo review of the totality of circumstances surrounding the defendant's March 4th videotape encounter with Detective Zaruka from the Hamburg Police Department, we're asking this Court to reject the district judge's determination that Zaruka improperly made some vague, implied promise which caused the defendant's entire statement to become involuntarily made and unconstitutionally obtained. Now, the magistrate and district judge didn't think it was vague. They thought that the only way you could construe the exchanges were as a promise, so tell us why you think that's erroneous. Well, I think because we know that really, I think, well, a couple of things. First of all, I think that it's erroneous because there was no direct promise made to the defendant. The only thing that he was told was that if he did not cooperate, and we know this because he told us this in his motion, in his affidavit, appendix page 45, that he would be prosecuted if he didn't answer their questions. That was his understanding of what was going on there as expressed in his affidavit. Say that again? He would not be prosecuted if he didn't? I'm sorry, he would be prosecuted if he didn't answer their questions. That's what he was told. Yes, I'm sorry. I'm sorry, you're saying that's what he understood. Should we focus on what he understood or should we focus on an objective interpretation of what the officer said? Well, certainly the standard is an objective one. And that's what the court in Colorado v. Connolly characterized as an essential link, and I think that's really the linchpin in this case. What's missing is there's no causation between anything that Detective Zeruka might have said to defendant and his statements and his confession and ultimately his agreement to cooperate. So what do you want it in for? I mean, it's been suppressed. You are proceeding to trial. The government is exercising its right to have us review the evidentiary ruling, essentially, before you go to trial. Certainly, Your Honor, I think it's substantial evidence in this case. No, sorry. When I said what do you want it in for, what pieces of it do you need in your case? I'm not asking why you want it. Okay. Okay. Well, I think, I mean, a couple of things. Obviously, the first and foremost is he identifies his source. So it shows, I mean, obviously there's sort of an implicit admission there that he— The source being tried with him? Presently, not right now, Judge. They have been invited separately. But I think what I really— Basically, you have a full confession from the exchange, whereas without that, you have to put the pieces of the puzzle together and argue to the jury that they show that he supplied the drugs that killed the man. Exactly, Judge. And I think, I mean, I think really what I'd ask this Court to focus on is the first six minutes of that videotape. Well, you know, as you said, it's a totality analysis. Right. So let me suggest to you the areas that seem to be the basis for the district court's ruling. And that's that the officer says to him, I'm not even looking to come after you, which might be understood to suggest you're not the target. And then you put that together on a totality analysis with the constant references to join the team, put on the jersey. You know, this is the soliciting of his cooperation. And as I understand the district court's analysis or reasoning, those kinds of statements together suggest to him you cooperate. We're not looking to go after you. You're going to become part of our team. And that would have led him to think that he would not be prosecuted. Now tell us why that's not the way to look at it. Because, Your Honor, those statements occurred more than six minutes into the videotape. And in those six minutes which preceded those statements by Detective Zeruka, even if they may be construed as implied promises, a lot of things happened, including just a minute and 45 seconds into the videotape, the defendant was asked by Detective Zeruka, why do you think you're here? I think I'm here because you want me to help busting somebody. That's what he says. So he knew exactly why he was there when he showed up there that day. I thought he didn't know that the person had been murdered. He knew that his cooperation was being solicited, but he was initially denying that he knew why they were focusing on him. He does deny that, Your Honor, and there's no evidence in the record that I can point to to refute that. I'm asking this because, of course, we could look at this tape and say, well, there's no coercion until point A. I mean, you're saying we shouldn't find coercion at all. But we could allow some of it to come in, but I'm not sure that's very helpful to you. It's the part after the statements that I pointed you to that's the confession. Well, there certainly is, I think, Your Honor. And I agree that I am advocating for the admission of the entire statement, but there's certainly a lot in the six minutes to precede any statement by Detective Zeruka that may be construed as an implied promise. And in that regard, the defendant on no less than 11 occasions in those first six minutes nods his head in agreement to various things that Zeruka says to him. First, he acknowledges his Miranda rights, at least his partial Miranda rights as given to him by Detective Zeruka. He also acknowledges the type of car he drives. He nods his head. He admits that he knows the decedent. He nods his head. He denies initially talking to the decedent on Saturday, the day that the decedent overdosed. However, he then nods his head in agreement to indicate what his cell phone number is. When he's confronted with the call logs, he nods his head in agreement to admit that he talks to the decedent a lot. And then after Zeruka tells him that he had been reading the text between the two, the decedent and the defendant, he states, obviously, you've been supplying him with heroin. Once again, the defendant nods his head. When Zeruka indicates that there's no doubt or no secret, those are his words, that a drug trafficking relationship existed between the two of them, the defendant nods his head. This all happens before anything that the magistrate judge determined was improper was said to him by Zeruka. Tell me what the government's position is where that point occurs. Where does that start? Is it six minutes in? It's about six minutes in, Judge. We're not looking to come after you at 2920 on the tape. That's roughly correct. I mean, I think the very first thing he says is, yeah, basically, we're not looking to come after you. You know, this is after, I mean, there's even. Excuse me, and would you agree that if we were to agree with the district court and the magistrate judge that a promise was made not to prosecute if he agreed to cooperate, and that promise clearly wasn't honored because he was arrested the day that he provided that cooperation, it appears, that that portion of his statement should not be admitted because of prosecutorial misconduct? Well, I don't agree that that promise was not fulfilled. What happened, Your Honor. No, but I'm saying if we were to find that a promise was made and then not kept, would you agree that that would support excluding the statement? If there was an actual promise that was not kept, yes. I guess I would have to concede that that would be a basis upon which to exclude the statement. However, that's not what happened. Well, let me ask you about that. Whether there was a promise or not, whether these facts lead to a conclusion of a promise, that's a finding of fact, isn't it? Yes. Okay. So to that extent, even though we're hearing the same tape as the district court, our standard of review is clear error, isn't it? Yes. As to whether there was a promise. No, as to the fact. I'm sorry, Judge, I didn't mean to interrupt you. But I would say as to what those facts mean, I think the court is de novo. Why? Because that's what the Supreme Court has told us. Whether or not the facts as found by the district court constitute coercion would be de novo. Right. But whether or not the words spoken amount to a promise, why don't you think that's a question of fact? I guess because I don't know how we separate. It certainly would be if we didn't have a tape and people had just testified to it because we would say, oh, well, the district court got to hear the people. It made credibility determinations. Here I understand it.  The district court had the tape. But is it still a finding of fact that we review for clear error rather than de novo? It may make a difference here. Well, I do think the determination ultimately of whether the statement was voluntarily made is review de novo. Exactly. But now let's take it in pieces. Whether it was a promise or not, I mean, you're arguing to us it's not a promise. And I'm asking you whether that question is one of fact or law. That, well, I think that is a question of fact. I would have to concede that that is a question of fact. But, I mean, I think, again, to point out that, first of all, I mean, I think that there's a sliding scale in terms of what promises are. I mean, clearly it had. Well, we've said that vague representations don't equal a promise. Right. I mean, we have precedent on that. And you, I had understood your argument to be that it was too vague to support, that there was clear error because what was happening here was not enough to constitute a promise under our precedent. Is that right? Well, that was certainly the argument that was raised in the brief. However, I think even sort of in reviewing the file myself and looking at things, I think even the stronger argument is the lack of any causation. Because I think it does, the lack of causation between anything that the officer did, whether there's a promise, an implied promise, or anything, none of that impacted the defendant in terms of his conduct that day, nor caused him to, nor can be construed as rendering his statement as involuntary. Well, let me ask you this. If instead the officer had said to him, now, you know, the guy died, so you're going to get charged in this case. There's no question about that. You think you would have gotten the same statements you got telling him, I'm not even looking to come after you? I do, Judge. And I think if you, I think it's borne out by the fact that. . . That's a hard argument to persuade on. But okay, if that's your position. Well, I definitely think, Judge, that we have, we do have sort of a little bit of a tell-the-tape, so to speak, if you'll pardon the pun, in terms of the first six minutes of what happened during this encounter. The defendant was very cooperative. He showed up there. He knew how he was coming there. He wanted to answer their questions, whether he knew that he was dead or not. The record at this point, we're stuck with the fact that he did not know that. But nevertheless, when he was told that, he continued to make admissions, including the fact that he had provided him with the heroin that resulted in his death, that he texted him from the bed. These are all statements, again, that he nods in agreement to prior to any statements at all by Zeruka soliciting his cooperation. I'm going to ask you this question in terms of is there anything in the record. You may know things that are outside the record. But it does seem curious that having been so cooperative, he's charged with the top count as opposed to any agreement kind of being reached. Is there anything in the record that sheds light on what happened there? The only thing in the record in that regard, Your Honor, is that he was initially charged in a criminal complaint which did not allege death results. It was just charged with an A41B1C. Most serious crime. Many months later, Your Honor. I see. I see. Okay, thank you very much. Thank you. We'll hear from your adversary. Thank you. Good morning. My name is David Adelman. Just a couple of responses to questions that was asked of Mr. Kennedy. The source was indicted separately, and he has since taken a plea and is awaiting- There's less concern to us, though, than this question of whether or not this can fairly be viewed as overbearing your client's will. Because, you know, whether it was a promise or not, which is in dispute, there's still the question about whether it's coercion. Well, I can't see it as anything but coercion. I mean, if Mr. Hake was offered a million dollars to confess, that would clearly be coercion. Right, but what he's told is I'm not even looking to come after you. I mean, I think we all agree that's the most-the strongest argument for the defense here is that he said that. But, I mean, that's not quite the same as and you won't be prosecuted. Well, if you listen to everything he said, I don't think that was- And the last thing that he's told is it's most likely you're not going to be pulled in. And there's no surprise expressed at the fact that it's put in terms of most likely as opposed to, look, you've got a guarantee from us. Your Honor, that was at the end of the interview. Right, but I'm talking about your client's reaction to it is not, wait a minute, I thought there was going to be no prosecution here. We have a totality of the circumstances obligation here. I'm not suggesting that anything is determinative, but that is also somewhat revealing here. Your Honor, I disagree that I'm not looking to come after you is the most critical statement. Oh, tell us what it is then. I want to make sure we don't overlook it. What's your concern here? I am not looking to come after you, but you've got to get on board or you shut your mouth and the weight of the federal government will come down upon you. That is as clear as day. Judge Villardo- Well, that doesn't suggest there are only two choices. I mean, he's just been told somebody died, and so you would understand that if in these circumstances you don't talk and you're going to get, you're going to bear the full weight of it. That's not the same as saying it's all or nothing. Well, I don't think it has to be all or nothing. But you're saying your client thought he wasn't going to get prosecuted. That's nothing. Well, I didn't say that. Judge Villardo said that that meaning was- You're here defending that your client thought he wasn't going to get prosecuted at all for supplying the drugs that took a life. Well, there is some preliminaries that weren't briefed very well. What happened in this case, because I didn't anticipate that what my client thought was going to be such a major part of the government's argument. The history of this case is that we file motions like we do in every criminal case, omnibus motions. The goal is to get a hearing. I submit an affirmation from my client. You don't want to reveal everything in the affirmation for obvious reasons. So we said enough to get a hearing. Judge McCarthy ordered a hearing. The government attorney said, Judge, we don't need a hearing. It doesn't matter what Mr. Hake understood these words to mean. It's an objective standard, and he submitted a lot of case law to persuade the court that, okay, we don't need a hearing, and both parties agreed. We're going to decide this case just on the objective meaning of the words used. The words used, Your Honor, if you can just bear with me, because I noted the ones that are most significant to me. The people that are the direct people that distributed this, especially if it caused the death, are going to be the number one targets. Technically, that could look very bad for you. Now, I'm going to ask you, it's your call. Either you get on board, put on the team jersey, play for this team, or you can be on the losing team. He keeps using the word or. Or is a very definitive connecting term that means it's either this or it's that. I don't know how else to interpret this language. I'm not looking to mess with you. I am not looking to come after you. But you've got to get on board. Or you shut your mouth, and shutting his mouth, Your Honor, those words are very important, because the decision Mr. Hake had to make here was whether to assert his Fifth Amendment right to remain silent, which would have been what an attorney would have told him to do, or to waive that right. And he was told, I am not looking to come after you, but you've got to get on board, or you shut your mouth, and then the weight of the federal government will fall down upon you. Now, Judge Villardo, in his decision, said the meaning of those words were loud, clear, and unmistakable. And I agree with him. They are loud, clear, and unmistakable. This man was given an either-or choice. This was after Judge Villardo reviewed the videotape. Two judges reviewed the videotape. Two judges watched the entire tape, and they came to the same conclusion, that this wasn't a vague implied promise. There are a lot of things that Mr. Kennedy can tell you wasn't said. It's not what wasn't said. It's what was said. And, I mean, I'm not even through my list yet. I mean, this man- I was struck in looking at the tape at the absence of any marked change in your client's behavior throughout the whole of the tape. Well, I mean, my client has a personality that's not on the record, but it's, you know, he's a 33-year-old man. There was not a lot of reaction. He was told that someone he knew died. He expressed that he was not aware of that. If there's some suspicion he was, I'm not aware. And there was just a kind of a flat affect throughout, and there was no marked change saying, oh, you're offering me, you know, to get out of jail free if I cooperate. Wow, okay, let's start talking. There was-I saw no change. Now, that may not have been a factual finding that I'm entitled to make on review. It was- I'm looking at clear error, but nonetheless, it was striking, and I wondered if you had a comment. Yes, it was something I noticed, and it was something that would have been dealt with at a fact-finding hearing had we had one. And I was willing to conduct a fact-finding hearing. Judge McCarthy ordered a fact-finding hearing, but it was the government that said that has nothing to do with this. What has nothing to do with this? The effect it had on Mr. Hake. They said that it's an objective standard. It's not a subjective standard. It's not what the words mean to him. It's what the words mean objectively. You would say even maybe that the videotape is irrelevant, that we should just be looking at the transcript. Is that correct? Given the fact that the government had an opportunity for a hearing, and they argued against the hearing, and the hearing was canceled strictly because the government didn't want the hearing, I think it would be very unfair to the defense to start considering the effect that the words apparently had from viewing the video on the defendant. Well, I mean, that's not so. I mean, we look at the totality of the evidence, and that evidence includes the video. Certainly, if your client had broken down at some point or whatever, you would want us to consider that in terms of at least how the officer's actions are viewed. But let me stick with the objective standard. You know, you've talked about the government saying or. On the one side is we're not looking to come after you. On the other side is or the weight of the federal government is going to come down on you. In a case in which someone has died, the likelihood that the government would offer a no-prosecution deal to the supplier seems extremely remote. So on the not looking to come after you, why isn't objectively it's not looking to come after you with, you know, the most severe counts? We can deal here. We can, you know, we can deal your plea to something lesser. Why isn't that the understanding? Who could have thought that having been the one who supplied the drugs that killed somebody, you were going to walk away? Because Zaruka told Mr. Hake that he was looking for the source. Those were the people he wanted. But that doesn't mean that's the only person he was looking for. I mean, this goes on all the time in cases that don't involve drugs and whatever. The cooperator winds up pleading. He pleads to a lesser count, but rarely do people walk away. Judge, you know that and I know that, but Mr. Hake didn't know that. Well, that's a question for objectively what would someone understand here. But, I mean, I'm just asking you to comment on the fact that given the severity of what your client did, an expectation that not looking to come after you would mean not looking to come after you for anything. But that's a false dichotomy here because they came after. Mr. Hake started cooperating as soon as these words were spoken to him. And he says even before. No, he was nodding. He was nodding in consent. Well, but he was also talking. So let me take you down that path very slightly. Do you agree that there is a period of exchange, conversational exchange, however that occurs, up to about six minutes before, we'll say the government, it's a city police officer, a detective, whatever he is on some task force, before the government agent starts giving him the choices? I don't think it was six minutes in and I apologize. I looked at the tape and I'm pretty sure it's six minutes in before I heard the first get on the team or we're not looking to come after you. We could even start with that for whatever that means. So would you concede then that everything up to that point, there were no promises made, no coercion, that would come in? I would concede that up until the point that the coercion started, there's no basis. Coercion being the we're not looking to come after you. That is the promise you were talking about. I think the first statement that started the ball rolling here was the people that are, the direct people that distributed this, especially if it caused a death, are going to be our number one target. And it went on from there. No, but that's not a promise of anything. That's just a statement. Your argument has to be, if you're going to be successful at all, you made a promise. We're not looking to come after you. That's what you're characterizing as a promise. It first gets articulated six minutes in, trust me, but obviously double check. We'll all make sure we get it right. But everything up to that point has got to be admissible, doesn't it? I agree that the suppression issue starts with the very direct promise. Promise, right. And or threat that the district court judge found to be very coercive. Weight of the federal government coming down on you. And, I mean, that is the issue. I agree with you, Your Honor, that that's the issue that I believe makes this confession involuntary. So anything that happened before the statement became involuntary, I would agree with you that there's no basis to suppress that. Just to finish, Your Honor, what Mr. Hake was told was false misleading and coercive. Judge Villardo found that. I agree that that's a finding of fact. I'm just curious when we have the exact same record as the district court. I do understand that you can watch the video the same as Judge McCarthy did, the same as Judge Villardo did, but I still think it's a finding of fact. He said it was loud, clear, and unmistakable. But anyway, Judge Villardo found it to be false misleading and coercive. He did not find it to be a close call. The government's argument is basically about what was not specifically said. There's a lot of things that weren't specifically said. I don't think we can go down that road. We've got to focus on what was specifically said, and I've got about half a page of quotes that were coercive. And maybe each of them individually wouldn't have brought us here. But in total, Mr. Hake was given an either-or choice. He selected the option that basically, as Judge Villardo said, who in their right mind would select the other option? No one would. That's coercive. That's involuntary. And we don't want to be offering evidence in criminal cases based on coerced confessions. Thank you. Thank you. Mr. Kennedy. Very briefly, Your Honors, thank you. Dana review is particularly appropriate, whereas here ---- Excuse me, Mr. Kennedy. I just wanted to ask a quick question. Would you say that Mr. Hake in fact received any benefit from his cooperation? And if so, what was it? Well, initially he was only charged with the ---- Ultimately he was charged with the death enhancement. That is true. So would you say there was any benefit that he received? There was a period of plea negotiations which interceded between the time that the complaint was filed and in December, when it was seven or eight, nine months later when ---- But, I mean, that's really all that's in the record. But the record does seem pretty clear that he did cooperate. I'm sorry? The record does seem pretty clear that he did cooperate. Yes, he did. Yes. There's no question about that, yes. And, I mean, I would point out still, too, I mean, until and unless, you know, once the case is resolved, these are all factors. I mean, such factors in terms of a 5K or anything, I mean, as the Court is aware, that's typical procedure. People get credit for their cooperation, you know, at the time of sentencing, oftentimes, if not earlier in terms of potential plea disposition. But I just wanted to point out that in terms of the standard of review, really what's ---- I think that the key thing here is that there is no dispute as to the relevant facts. And for that reason, de novo review is appropriate. This Court instructs in United States v. Davis at 326 F. 3rd. 365. Which says what? That where the relevant facts are not in dispute. Now, I don't think that they are in dispute here. I think the import of them. Whether this was a promise or not. I mean, what you haven't pointed us to is a case that says, well, if the, you know, statements or whatever are videotaped, the appellate court gets to do a de novo factual determination. Well, clearly the court has to conduct a de novo determination of whether the statement was voluntary. And certainly, that's part of, I mean, in order to do that. That's the ultimate conclusion. Right. But in order to do that, I think you have to review the tape, because that's the only evidence that is available. I would just, real quick, on the first two factors under the totality of circumstances, the characteristics of the accused and the characteristics, you know, of the interrogation, there's at least 15 different factors, all of which weigh in favor of a finding of voluntariness. You know, the defendant was, you know, partially advised of his Miranda warnings. He was specifically advised, truthfully so. It's a problem for you, isn't it? Because the part that he, the one thing he wasn't told was anything you say can be used against you. I don't know that that's a problem, Your Honor. It's unfortunate that it wasn't included. But it's certainly, I mean, since it wasn't required, because it was not a custodial interrogation. I know it wasn't required, but, you know, your position, and you are, of course, the United States attorney, would be a lot easier here if the man had been told anything you say can be used against you, now let's talk. But, you know, the fact that he wasn't told that when we put it in the mix of factors hurts you rather than helps you. It would be better for us, certainly, if it were there. I agree. But he still, I mean, the point is, he came to the police station that day knowing exactly why they wanted him there. They wanted him to cooperate. Ultimately, that's what he agreed to do. I don't think that there's anything that Detective Zeruka did which overbore, and I think it's borne out on the tape itself, which overbore his will or improperly induced him to do something that he otherwise was not prepared to do when he walked into a police station that day. Thank you. Unless there's anything further. Thank you very much. Gentlemen, we're going to take this matter under advisement. Thank you.